3/29/05

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LORI B. GANS, individually and on behalf of a class of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CHASE MANHATTAN AUTOMOTIVE FINANCE CORP. and MANUFACTURERS HANOVER LEASING INTERNATIONAL CORPORATION, as successor by merger to CHASE MANHATTAN SERVICE CORPORATION,<br><br>Defendants. | C.A. No.: 04-10595-RGS<br><br>FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL |

## INTRODUCTION

1. This is a complaint seeking damages, declaratory and injunctive relief pursuant to the RICO Act (18 U.S.C. § 1961, et seq.) and the common law arising out of the defendant's fraudulent scheme of unlawfully billing, collecting and retaining an additional monthly lease payment from its motor vehicle lessees above and beyond what had been contracted for in the motor vehicle leases. Since at least the mid-to late 1990s, the defendants, who controlled the activities of the enterprise, "Chase Auto Finance," (later called "Chase Automotive Finance") have, through "Chase Auto Finance" knowingly overcharged their automobile lessees an extra monthly payment on leases that had been fulfilled.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1964 (c) ("RICO"), as well as pendent jurisdiction over state claims

pursuant to 28 U.S.C. § 1367. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2).

**PARTIES**

3.  Plaintiff Lori B. Gans ("Plaintiff") is an individual residing in Newton, Massachusetts.

4.  Defendant Chase Manhattan Automotive Finance Corporation ("Chase Automotive") is a Delaware corporation. Chase Automotive has conducted business in all fifty states, including Massachusetts.

5.  Defendant Manufacturers Hanover Leasing International Corporation ("MHLIC"), as successor by merger to Chase Manhattan Service Corporation ("Chase Service"), is a Delaware corporation. In 1997, Chase Service was merged into Manufacturers Hanover Leasing International Corporation, which is a wholly-owned subsidiary of J.P. Morgan Chase Bank, which is a wholly-owned subsidiary of J.P. Morgan Chase & Company.

6.  Each of Chase Automotive and MHLIC is sued individually and as a co-conspirator and aider and abettor, and each knowingly and/or recklessly conspired in, or aided and abetted the common course of conduct set forth below.

**DEFENDANTS' COMMON COURSE OF CONDUCT**

7.  Chase Automotive, MHLIC and Chase Service (collectively, "Defendants") have been or are in the business of financing long-term leases of motor vehicles. Typically, a customer will negotiate a multi-year lease with a vehicle dealer, upon the execution of which the first monthly payment is paid to the dealer. By pre-arrangement with the dealer, either Chase Automotive or Chase Service purchases from

the dealer (a) the title to the vehicle, and (b) the dealer's rights and obligations under the terms of the multi-year lease, including the right to receive monthly lease payments.

8.  At all times relevant to this complaint, Defendants and their affiliates carried out their lease financing activities through an enterprise-in-fact they called "Chase Auto Finance" and, later, "Chase Automotive Finance." This enterprise operated for the common purpose of collecting lease payments on vehicle leases. At all times relevant to this complaint, the enterprise known as "Chase Auto Finance" and "Chase Automotive Finance" had an existence separate and apart from any pattern of racketeering.

9.  Since at least 1995 and continuing to this date, Defendants conspired to devise, participated in, and/or brought to fruition a fraudulent scheme whereby the enterprise made false and/or misleading statements to lessees designed to secure for Defendants an additional monthly lease payment by such lessees on all vehicle leases.

10. Defendants caused "Chase Auto Finance" and "Chase Automotive Finance" to send via United States Mail monthly payment invoices to lessees such as Plaintiff. Such invoices reflect a "payment due" date and a payment amount, but do not identify the number of each payment due, i.e., "payment 2 of 36"; "payment 36 of 36." Instead, the invoices sent by "Chase Auto Finance" or "Chase Automotive Finance" list the "Original Lease Term" in months ("Term") and the "Months Lease in Service" ("MIS"), with the first invoice sent via United States Mail identifying the "MIS" as being "1." In other words, payment of the monthly invoice identified as "MIS 1" is actually the second monthly payment on the lease.

11. Each successive invoice sent by "Chase Auto Finance" or "Chase Automotive Finance" via United States Mail identifies the MIS, and not the payment

3

number. Near the end of the lease term, "Chase Auto Finance" sends via United States Mail a final monthly invoice upon which the "Term" and "MIS" numbers are the same, *e.g.*, for a thirty-six month lease term, "Term 36" and "MIS 36"; for a thirty-nine month lease term, "Term 39" and "MIS 39." Because the "MIS" number is the same as the number of payments already made on the lease term, payment of this final invoice by the lessee actually represents a payment in excess of the lease terms. That is, because payment on an invoice reflecting "Term 36" and "MIS 36" is actually the thirty-seventh payment, the representation on such invoice that a payment is "due" is false and misleading.

12. The issuance of an additional invoice and the false representation that payment of such invoice was due under the terms of the lease is a regular course of business in the processing of leases purchased by Defendants.

13. Each of Defendants agreed to act in concert with the other, and with affiliates and persons associated with them, to further the fraudulent scheme described above, and each rendered many acts in furtherance of a conspiracy to achieve their purposes through unlawful activities.

14. Each of Defendants agreed to the overall objective of the conspiracy, to wit: the collection of monies from lessees that were in excess of the amounts due under the lessees' respective multi-year vehicle leases.

## THE DIRECT WITHDRAWAL CLASS ACTION

15. On January 13, 1999, Linda and Thomas Grier, on behalf of themselves and other similarly situated, filed a class action complaint against Chase Automotive in the United States District Court for the Eastern District of Pennsylvania, styled Grier, et

al. v. Chase Manhattan Automotive Finance Co., Civil Action No. 990180 ("Grier Action"). The plaintiffs in the Grier Action alleged that they had entered into a 36-month lease agreement with Chase Automotive, the terms of which provided for monthly payments in the amount of $323.09 to be withdrawn automatically from the plaintiffs' bank account. The Grier plaintiffs further alleged that Chase Automotive failed to terminate the automatic withdrawals at the expiration of the lease period, and collected from the Grier plaintiffs' bank account additional payments not required under the terms of the lease. The Grier plaintiffs further alleged that Chase Automotive maintained a policy and practice of improperly collecting and retaining extra automatic withdrawal payments from all of its customers who entered into consumer leases for automobiles and participated in the automatic withdrawal program.

16. On October 15, 1999, the parties to the Grier Action entered into a class action settlement agreement which, *inter alia*, provided that Chase Automotive would "modify its leasing practices and make the appropriate changes in its computer system so that effective May 12, 1999, lease payments are no longer automatically withdrawn after the lease maturity date." Grier v. Chase Manhattan Automotive Finance Corp., 2000 U.S. Dist. LEXIS 1339 * 3 (E.D. Pa. 2000).

17. Upon information and belief, Chase Automotive was aware, but did not inform Class Counsel or the Court in Grier, that the policy and practice of unlawfully collecting additional lease payments from lessees after the lease maturity date was not limited to those leases upon which monthly payments were made by automatic withdrawal from the lessee's bank account. In fact, the policy and practice also applied to all lessees who were sent monthly invoices.

18.     After the <u>Grier</u> settlement, Defendants knowingly and willfully continued to send invoices to its motor vehicle lessees which falsely represented that a payment was due and payable when in fact no such payment was due and payable.

### FACTS RELATING TO THE REPRESENTATIVE PLAINTIFF

19.     On April 25, 1995, Plaintiff leased a vehicle from Shaw Saab in Hingham, Massachusetts. Shaw Saab thereafter assigned its rights and obligations under the lease to Chase Automotive.

20.     The terms of the lease agreement signed by Plaintiff provided that she would make thirty-six (36) monthly payments in the amount of $325.35 each, and that the total payments over the life of the lease would amount to $11,712.60.

21.     The lease agreement further provided that the first monthly payment was due upon the signing of the lease, and that the remaining payments were due and payable on the 28th of each succeeding month. Pursuant to such terms, Plaintiff paid the first payment, in the amount of $325.35, by check on the date of the lease agreement, April 25, 1995.

22.     In May 1995, Plaintiff received via United States Mail her first invoice, which stated an amount due of $325.35 with a due date of May 28, 1995. The invoice reflected the number "36" in the "Term" or "Original Lease Term" column, and the number "1" in the "MIS" or "Months Lease in Service" column. The invoice appeared to be a form invoice developed by Chase Service, and the invoice directed that the check in payment of the invoice be made payable to "Chase Auto Finance."

23.     Plaintiff made timely payment to "Chase Auto Finance" on the May 1995 invoice. Such payment was sent via United States Mail.

24. Plaintiff continued to receive by mail monthly invoices, which she paid.

25. On February 10, 1998, "Chase Auto Finance" sent via United States Mail an invoice to Plaintiff which had the number "36" in the "Term" column and the number "34" in the "MIS" column. The invoice directed that payment was due by February 28, 1998. The invoice contained the following language: "You have only three months remaining on your lease. If you have not yet heard from your lease representatives, please call 1-800-242-7396 to discuss your lease end options."

26. On April 10, 1998, "Chase Auto Finance" sent an invoice to Plaintiff via United States Mail bearing the following language: "This is the final invoice for your lease term." The number "36" was in the "Term" column and the number "36" was in the "MIS" column. As directed on the invoice, Plaintiff paid the lease payment of $325.35 to "Chase Auto Finance," and such payment was sent via United States Mail. Despite the fact that the terms of Plaintiff's lease called for 36 monthly payments, with total payments amounting to $11,712.60, Plaintiff made 37 monthly payments, totaling $12,037.96.

27. Subsequently, following correspondence received from "Chase Auto Finance", which represented that it held the motor vehicle title and offered to extend the lease, Plaintiff extended the lease for an additional several months.

28. On November 5, 1998, Plaintiff and Shaw Saab entered into a new lease agreement for a different motor vehicle. The lease provided that Plaintiff would make a total of 39 monthly payments of $329.74 and that the total monthly payments would be $12,859.86. Shaw Saab thereafter assigned its rights and obligations under the lease to

7

Chase Automotive. On November 5, 1998, Plaintiff paid the first monthly payment of $329.74.

29.   Plaintiff continued to make monthly payments on this second lease pursuant to invoices sent by "Chase Auto Finance" and, subsequently, by "Chase Automotive Finance." These invoices, as with the invoices sent pursuant to the terms of the first lease agreement, contained columns, or, as later developed, data boxes, indicating "Original Lease Term" or "Term" and "Months Lease in Service" or "MIS."

30.   On January 18, 2002, "Chase Automotive Finance" sent by United States Mail to Plaintiff a 39th monthly invoice, with a payment due date of February 5, 2002. The invoice had the number "39" in the "Term" box and the number "39" in the "MIS" box. In fact, prior to the invoice being sent, Plaintiff had already made 39 payments under the lease agreement. The 39th invoice falsely stated that a final monthly payment was due when, in fact, no such payment was due under the terms of the lease agreement. Plaintiff made the payment as directed.

31.   In the spring of 2002, after other questions arose concerning the billing practices of "Chase Automotive Finance", and after a review of the lease agreement and the monthly invoices, Plaintiff became aware for the first time that she had made 40 payments on a 39-month lease. A customer service representative at "Chase Auto Finance" stated that the 40th invoice was a "computer error" and that a refund of the 40th payment would be made to Plaintiff. Later, Plaintiff found her records concerning the first lease and discovered that she had been billed for, and did pay, an additional monthly lease payment on the 1995 lease.

8

32. Due to the misleading nature of the invoices, i.e., the tallying of Months Lease in Service rather than the number of payments and the statement on each such invoice that a lease payment was due and payable, Plaintiff was misled and did not discover the operative facts sooner.

33. Defendants wrongfully concealed their fraudulent practice of invoicing and collecting additional payments not required pursuant the terms of the applicable lease agreement by the issuance of misleading and deceptive monthly invoices, and by instructing customer service representatives, in the event that a lessee discovered the additional payment, to attribute the additional invoices to a "computer error." By such deception and wrongful concealment, Plaintiff remained ignorant of the fraud without fault on her part.

## CLASS ALLEGATIONS

34. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23 on behalf of a class of all other persons similarly situated. The class is defined as:

> All persons who entered into a motor vehicle lease with, or which was transferred or assigned to, Chase Manhattan Automotive Finance Corporation, Chase Manhattan Service Corporation or an affiliate of either entity, where a lease payment was invoiced and paid after the final lease payment due on the lease had already been made.
>
> Specifically excluded from the class are Federal Judges and Magistrates and their immediate families, Chase Manhattan Automotive Finance Corporation, Manufacturers Hanover Leasing International Corporation, Chase Manhattan Service Corporation, any parent, subsidiary or affiliate thereof and any entity which any of defendants has a controlling interest, and the defendants' officers, directors, employees and immediate families.

(Hereafter, the "Class" or the "Plaintiff Class.")

35. The Class is so numerous that the individual joinder of all its members is impracticable. While the exact number and identities of class members are unknown at

9

this time and can only be ascertained through discovery, on information and belief, Plaintiff believes that thousands of motor vehicle lessees are members of the Class and that all members of the Class are readily identifiable from the defendants' records.

36.     There are common questions of law and fact which are common to all members of the Class, including but not limited to Defendants' participation in a fraudulent scheme to bill, collect and retain an additional monthly lease payment from class members above and beyond what had been contracted for in the motor vehicle leases.

37.     Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class sustained damages and financial loss proximately caused by Defendants' wrongful conduct alleged herein.

38.     Plaintiff will fairly and adequately protect the interests of members of the Class. Plaintiff has experienced the same type of damages as class members and has retained attorneys experienced in the prosecution of class actions, including complex consumer class actions.

39.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation, since individual joinder of all members of the Class is impracticable. Even if all class members could afford individual litigation, it would be unduly burdensome to the individual courts. Individual litigation would magnify the delay and expense to all parties. By contrast, the class action device presents far fewer management difficulties and provides benefits of unitary adjudication, economies of scale, and comprehensive supervision by a single court. Concentrating this

litigation in one forum would promote judicial economy and efficiency and promote parity among the claims of individual class members as well as judicial consistency.

40. The prosecution of separate individual actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members, thus, establishing inequitable standards of conduct for Defendants.

41. The prosecution of separate individual actions by individual class members would create a risk of adjudications with respect to them that would, as a practicable matter, be dispositive of the interests of the other class members not parties to such adjudications or that would substantially impair or impede the ability of such non-party class members to protect their interests.

42. The prosecution of separate individual actions by individual class members would not resolve the important issues associated with a widespread consumer fraud perpetrated upon the innocent public and would create the risk that Defendants would continue their deceptive practices against those consumers who unaware of individual class members' separate actions.

43. There are questions of law and fact common to all members of the Class, which questions predominate over any question affecting only individual class members.

44. The principal common questions of law and fact with respect to Defendant's billing practices are:

    a. whether Defendants, through "Chase Auto Finance" and "Chase Automotive Finance," mailed invoices to class members which falsely stated that

an additional payment was due and payable on each lease when, in fact, it was not due and payable;

   b. whether Defendants' conduct and/or the conduct of "Chase Auto Finance" and "Chase Automotive Finance" constituted mail fraud;

   c. whether Defendants used the United States Mail to promote and perpetuate the fraudulent scheme;

   d. whether Defendants violated various provisions of the RICO act;

   e. whether Defendants breached the terms of their lease contracts with class members; and

   f. whether the class members are entitled to disgorgement of the ill-gotten gains received by Defendants as a result of the fraudulent scheme.

## COUNT I - VIOLATION OF 18 U.S.C. § 1962(c)

45. Plaintiff realleges and incorporates paragraphs 1 through 44 above.

46. Defendants have engaged, and continue to engage, in a scheme to defraud vehicle lessees such as Plaintiff by causing "Chase Auto Finance" and "Chase Automotive Finance" to send invoices through the United States mail that falsely and deceptively state that a lease payment is due and owing. Two examples of this mail fraud are the invoices sent to Plaintiff on April 10, 1998 and January 18, 2002.

47. Defendants conducted the enterprise-in-fact, known as "Chase Auto Finance" and "Chase Automotive Finance", which functioned as a continuing unit for the common purpose of conducting Defendants' vehicle leasing business. "Chase Auto Finance" and "Chase Automotive Finance" is the enterprise through which Defendants'

12

also conducted their illegal activities, including the mailing of the deceptive invoices and the processing of payments made as a result of such invoices.

47. The enterprise committed two or more known and predicate acts and agreed to participate in the conduct of racketeering activity.

48. Defendants knowingly agreed to participate, and aided and abetted the other, in the fraudulent scheme. Each of Defendants had or should have had an awareness that its role in the affairs of the enterprise was improper and that its actions substantially assisted the actions of its agents in mailing false statements.

49. Defendants knew that invoices were being sent, via the United States Mail to motor vehicle lessees, and that such invoices falsely stated that a payment was due and payable on a lease when, in fact, no such payment was due and payable. The United States Mail was used to facilitate this fraudulent scheme. Chase Service conspired with Chase Automotive to design the invoices so as to make it extremely difficult to uncover the fraudulent scheme.

50. By devising and putting into motion their fraudulent scheme, and by using the United States Mail to deliver false and deceptive invoices to Plaintiff and class members, Defendants caused the enterprise to commit thousands of predicate acts in the last ten years. Two examples of these predicate acts are the invoices sent to Plaintiff via the United States mail dated April 10, 1998 and January 18, 2002. The predicate acts have been continuous and continue to this day.

51. By using the United States Mail to carry out a scheme to defraud in violation of 18 U.S.C. § 1341, and by agreeing to act in concert by forming a conspiracy to commit the above predicate acts and to conduct the affairs of the enterprise through a

pattern of racketeering activity, and by taking the necessary steps to effectuate the conspiracy, Defendants violated 18 U.S.C. §§ 1962(b), (c) and (d), and 18 U.S.C. § 1341.

52. The predicate acts described above were a proximate cause of injury to Plaintiff and to members of the Plaintiff Class.

53. Upon information and belief, to date there have been no criminal indictments or convictions on any of the aforesaid predicate acts. Upon information and belief, to date there have been no civil judgments rendered on any of the aforesaid predicate acts.

54. Defendants earned substantial profits from the enterprise known as "Chase Auto Finance" and "Chase Automotive Finance", and Defendants acted to maintain and maximize their profits by causing the enterprise to commit mail fraud.

55. As control persons of the enterprise, Defendants also were the perpetrators of the illegal acts that they caused the enterprise to commit.

56. The activities of the enterprise had a significant impact upon interstate commerce, in that monies were falsely invoiced and paid through the use of interstate mail deliveries.

57. Defendants received the benefits of the fraudulent scheme described above, either directly or indirectly.

58. Plaintiff and the Plaintiff Class were injured in their business or property by reasons of the defendants' violations of 18 U.S.C. § 1962.

## COUNT II – VIOLATION OF 18 U.S.C. § 1962(b)

59. Plaintiff realleges and incorporates herein paragraphs 1 through 58 above.

60. Defendants maintained an interest in, or control of, "Chase Auto Finance" and "Chase Automotive Finance", which engaged in the pattern of activity described above.

## COUNT III – VIOLATION OF 18 U.S.C. § 1962(d)

61. Plaintiff realleges and incorporates herein paragraphs 1 through 60 above.

62. Defendants conspired to violate 18 U.S.C. § 1962(c).

## COUNT IV – BREACH OF CONTRACT

63. Plaintiff realleges and incorporates herein paragraphs 1 through 62 above.

64. Each member of the Plaintiff Class, including Plaintiff, had a valid contract with one or more of Defendants which called for a fixed number of monthly lease payments to be paid.

65. Defendants breached said contracts by billing, collecting and retaining an extra monthly lease payment from Plaintiff and members of the Plaintiff Class.

66. Plaintiff and members of the Plaintiff Class have suffered damages as a result of Defendants' breach of contract.

## COUNT V – CONVERSION

67. Plaintiff realleges and incorporates herein paragraphs 1 through 66 above.

68. Defendants billed, collected and retained at least one monthly lease payment from each of Plaintiff and the members of the Plaintiff Class that was not due under the motor vehicle lease agreements.

69. Defendants are unlawfully and wrongfully exercising dominion and control over funds owned by Plaintiff and members of the Plaintiff Class, respectively, in defiance of the Plaintiff Class's right to possess and use such funds.

70. Plaintiff and members of the Plaintiff Class have been damaged by Defendants' conversion of their funds.

## COUNT VI – UNJUST ENRICHMENT

71. Plaintiff realleges and incorporates herein paragraphs 1 through 70 above.

72. By virtue of their wrongful actions, Defendants have been unjustly enriched by the practice of billing and collecting payments in excess of the amounts due under motor vehicle leases, and Defendants' have earned, and continue to earn a return on investment on such amounts.

73. Plaintiff, for her benefit and the benefit of the Plaintiff Class, seeks to impose a constructive trust over, and to recover for the members of the Plaintiff Class, all amounts by which Defendants have been unjustly enriched.

## COUNT VII – INJUNCTIVE AND DECLARATORY RELIEF

74. Plaintiff realleges and incorporates herein paragraphs 1 through 73 above.

75. There exists between Plaintiff, individually and as representative of the Plaintiff Class, and Defendants an actual controversy.

76. Plaintiff requests the following class-wide equitable relief:

   a. that a judicial determination and declarations be made of the rights of Plaintiff and the Plaintiff Class, and the corresponding responsibilities of Defendants;

  b. that Defendants be declared financially responsible for providing notice to class members;

  c. that Defendants be ordered to disgorge, for the benefit of the Plaintiff Class, all or part of their ill-gotten proceeds, including profits and return on investment, derived from this fraudulent scheme, and/or to make full restitution to Plaintiff and Plaintiff Class members; and

  d. that Defendants be ordered to cease their fraudulent practice of billing motor vehicle lessees for an additional payment which is not due under the leases.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for judgment against Defendants, and each of them, jointly and severally, and for relief as follows:

1. an Order certifying the plaintiff class and any appropriate subclasses thereof under the provisions of Fed. R. Civ. P. 23, and appointing Plaintiff as a class representative and Plaintiff's counsel as class counsel;

2. for the equitable relief requested in Counts VI and VII;

3. for compensatory damages as will be made to appear;

4. for treble damages as allowed by law;

5. for punitive or exemplary damages;

6. for attorneys' fees;

7. for interest and costs; and

8. for such other and further relief as this Court deems just.

## JURY DEMAND

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted,
For the Plaintiff

/s/ Fredric L. Ellis
Fredric L. Ellis, BBO # 542075
Edward D. Rapacki, BBO # 411910
Joseph M. Makalusky, BBO # 631240
ELLIS & RAPACKI LLP
85 Merrimac Street, Suite 500
Boston, MA 02114
Dated: March 18, 2005                (617) 523-4800