UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LORI B. GANS, individually and on behalf of a class of others similarly situated,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>CHASE MANHATTAN AUTOMOTIVE FINANCE CORP. and MANUFACTURERS HANOVER LEASING INTERNATIONAL CORPORATION, as successor by merger to CHASE MANHATTAN SERVICE CORPORATION,<br>　　　　　　　　　　　Defendants. | C.A. No.: 04-10595-RGS |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS AND COMMENCEMENT OF SETTLEMENT PROCESS**

**INTRODUCTION**

Plaintiff Lori B. Gans ("Plaintiff"), individually and on behalf of a class of persons similarly situated, files this memorandum in support of the Joint Motion for Preliminary Approval of Class Action Settlement, Conditional Certification of Settlement Class and Commencement of Approval Process (the "Joint Motion"), which is filed herewith. The Joint Motion seeks preliminary approval of a proposed settlement of all claims in the above-captioned action pursuant to the terms of the parties' Settlement Agreement, dated February 28, 2006 (the "Settlement Agreement").

## **STATEMENT OF FACTS**

On March 26, 2004, Plaintiff filed this action on behalf of a putative class of motor vehicle lessees, alleging that Defendants violated the RICO Act (18 U.S.C. § 1961, *et seq.*) and the common law by unlawfully billing, collecting and retaining an additional monthly lease payment above and beyond what had been contracted for in the applicable motor vehicle leases. Subsequent discovery and a review of data revealed that respect to the subject lease payments, Defendants had credited such payments to class members' accounts with respect to approximately 98% of the lessees who had made such lease payments. Affidavit of Fredric L. Ellis ("Ellis Aff."), filed herewith, ¶ 3.

Plaintiff's counsel and Defendants' counsel engaged in arms' length settlement discussions over the course of several months in an attempt to resolve this action. The negotiations resulted in a Settlement Agreement dated February 28, 2006 which, in substance, provides the following:

1. Defendant Chase Manhattan Automotive Finance Corp., n/k/a Chase Auto Finance Corp., ("Chase"), has represented that without admitting any wrongdoing or liability on Defendants' part and denying the same, it no longer sends out invoices in the form and manner which gave rise to this lawsuit, *see* Settlement Agreement, ¶ B.3;

2. There are 1,037 class members in Settlement Class I, defined in the Settlement Agreement as "consisting all persons whose motor vehicle lease was transferred or assigned to Defendants and: (i) who have a credit entry - equal to either the base monthly payment, the monthly rent payment, or the total monthly payment set forth in the lease agreement – appearing in the general ledger account on Chase's financial records named 'Charge Off Income' as of October 31, 2004; and (ii) for whom no record

2

has been located indicating that such credit entries in the Charge Off Income account were previously paid to any such lessee." Settlement Agreement, ¶ B.1. Such class members will each receive an amount equaling their credit entry minus each such class member's pro rata share of Class Counsel's attorneys' fees and expenses and class representative fee as approved by the Court, *see id.* at ¶ B.2;

    3.    There are 48,169 class members in Settlement Class II, defined in the Settlement Agreement as "consisting of all person whose motor vehicle lease was transferred or assigned to Defendants, which lease terminated during the period from March 27, 2000 through July 31, 2004, and who: (i) made a monthly payment to Defendants equal to the total monthly lease payment due under their lease agreement within fifteen (15) days before or thirty (30) days after the Lease Maturity Date; (ii) did not retain possession of the vehicle that was the subject of the lease for more than thirty (30) days past the Lease Maturity Date; and (iii) did not owe any portion of any past due monthly rent payment at the time the Settlement Bill was generated." Settlement Agreement, ¶ B.1. Defendants will pay an amount of approximately $44.00 to each such class member minus each such class members' pro rata share of Class Counsel's attorneys' fees and expenses and class representative fee as approved by the Court, *see id.* at ¶ B.2;

    4.    If a class member meets the requirements for both groups, he or she will receive the amount equaling their credit entry, plus approximately $44.00, minus each such class member's pro rata share of Class Counsel's attorneys' fees and expenses and class representative fee as approved by the Court, Settlement Agreement, ¶ B.2; and

5.    No claim forms will be required to be filed by members of the Settlement Class, *see id.* at ¶¶ B.2.  Upon final approval of the Settlement, Defendants will send checks to all members of the Settlement Class.  *Id.*

## ARGUMENT

### I.   THE REQUIREMENTS FOR CERTIFICATION OF A SETTLEMENT CLASS UNDER FED. R. CIV. P. 23(a) AND (b)(3) ARE SATISFIED.

#### A.   Rule 23(a) Requirements.

Proponents of class certification must demonstrate, as an initial matter, that "(1) the class is sufficiently numerous to make joinder of all parties impracticable, (2) there are common questions of law and fact, (3) the claim of the named plaintiff representative is typical of the claims of the class, and (4) the named plaintiff will fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(a).  Satisfaction of these requirements necessarily assumes the existence of a class capable of definition by "stable and objective factors."  *Kent v. Sun America Life Ins. Co.*, 190 F.R.D. 271, 278 (D. Mass. 2000).  Each of these requirements is satisfied here.

##### 1.   **Numerosity**

While there is no strict numerical requirement, *see Gen. Tel. Co. of Northwest v. EEOC*, 446 U.S. 318, 329 (1980), a putative class representative must show "that it is difficult or inconvenient to join all the members of the class."  *Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 62 (D. Mass. 1997).  There is little doubt that the numerosity requirement is satisfied in this case, as there are approximately 50,000 class members from many different states.  Ellis Aff., ¶ 5.  Certification has been granted in cases involving much smaller, and less geographically diverse, classes of plaintiffs.  *See, e.g., George Cussier Enters., Inc. v. Subaru of New England, Inc.*, 2001 U.S. Dist. LEXIS

12054, at *10 (D.N.H. Aug. 3, 2001)(class of 75 members located throughout New England); *Holten v. L.F. Rothschild*, 118 F.R.D., 280, 282 (D. Mass. 1987)("Whether the number is 50 or 60, it is sufficiently large.")

### 2. **Commonality**

Rule 23(a)(2) requires a preliminary showing that some questions of law or fact are common to class members. "This commonality requirement is a 'low hurdle' easily surmounted. … Indeed, it requires only that 'resolution of the common questions affect all or a substantial number of the members.'" *Duhaime*, 177 F.R.D. at 63, quoting *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992); *Jenkins v. Raymark Indus.*, 782 F.2d 468, 472 (5th Cir. 1986). Accordingly, the commonality requirement is satisfied when class members' claim arise out of a "'common nucleus of operative fact,'" *McAdams v. Mass. Mutual Life Ins. Co.*, 2002 U. S. Dist. LEXIS 9944, at *10 (D. Mass. May 15, 2002), quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992), *cert. denied*, 506 U.S. 1051 (1993), or are subject to the same common defenses, *see Smilow v. Southwestern Bell Mobile Sys., Inc.*, 323 F.3d 32, 39 (1st Cir. 2003)("both the factual basis for and the legal defense of waiver present common issues for all class members"). *See also In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 303 (E.D. Mich. 2001)(commonality "requires only some common questions; not a predominance of common questions as required under Rule 23(b)(3).")

The commonality requirement is easily met here. The Complaint alleges that Defendants, pursuant to regular business practice, issued to all class members an invoice for an additional monthly lease payment. Whether this alleged practice violated RICO is but one example of the common issues of law affecting all class members. *See In re*

*Lupron® Marketing and Sales Practices Litig.*, 228 F.R.D. 75, 88-89 (D. Mass. 2005)(commonality requirement "easily satisfied" in civil RICO case arising out of retail pricing of prescription medication); *Kirkpatrick v. J.C.Bradford & Co.*, 827 F.2d 718, 724-725 (11th Cir. 1987)(commonality exists where standardized conduct or uniform written materials are directed toward the members of a proposed class); *Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983) ("a single conspiracy and fraudulent scheme against a large number of individuals is particularly appropriate for class action").

### 3. Typicality

The typicality requirement of Rule 23(a)(2) "is satisfied when 'each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *McAdams*, 2002 U.S. Dist. LEXIS 9944 at *13, quoting *In re Sumitomo Copper Litig.*, 182 F.R.D. 85, 94 (S.D.N.Y. 1998). *See also Burstein v. Applied Extrusion Technologies, Inc.*, 153 F.R.D. 488, 491 (D. Mass. 1994)(typicality requirement satisfied where plaintiff's claims "arise from the same course of conduct that gave rise to the claims of the absent members.") Typicality "refers to the nature of the claim of the class representatives, and not to the specific facts from which the claim arose or relief is sought." *M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*, 100 F.R.D. 468, 470 (D. Mass. 1984), quoting *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.D.R. 87, 99 (S.D.N.Y. 1981).

Plaintiff's claims against Defendants are typical of the claims of other class members as the "named plaintiff's claims arise from the same [alleged] course of conduct that gave rise to the claims of the absent [class] members." *Duhaime,* 177 F.R.D. at 63. For example, Plaintiff alleges that, at the expiration of the 39-month lease term of her

1998 lease, she was invoiced, and paid, a 40th monthly lease payment that allegedly was represented by Chase as being the final monthly lease payment.  *See* First Amended Class Action Complaint and Demand for Jury Trial ("Complaint").  Here, Plaintiff's claims - - as do the claims of other class members - - focus on Defendants' alleged course of conduct in sending out such invoices,  and the claims of all class members share common legal theories.

Moreover, the differences in the amount of damages allegedly suffered by the various class members do not render "atypical" the claims of one group in comparison with the other.  This is so because in order to meet the typicality requirement of Rule 23(a)(3), a plaintiff "need not show substantial identity between [her] claims and those of absent class members, but need only show that [her] claims arise from the same course of conduct that gave rise to the claims of absent members."  *Randle v. Spectran*, 129 F.R.D. 386, 391 (D. Mass. 1988), quoting *Priest v. Zayre*, 118 F.R.D. 552, 555 (D. Mass. 1988). *See also In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d at 312 (typicality not defeated where defendant's "overarching scheme" was "linchpin" of complaint, "regardless whether each class member alleges a churning claim, a vanishing premium claim, an investment plan claim, or some other injury falling within the category of 'other sales' claims.")

    **4.**  **Adequacy**

There are "'two basic guidelines for meeting the adequacy of representation standard of Rule 23(a)(4) … : (1) the absence of potential conflict between the named plaintiff and the class members and (2) that counsel chosen by the representative parties is qualified, experienced and able to vigorously conduct the proposed litigation.'"  *Adair*

*v. Sorenson*, 134 F.R.D. 13, 18 (D. Mass. 1991), quoting *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985).

Here, as Plaintiff's interests are aligned with those of other class members, Plaintiff and her counsel have demonstrated that they will fairly and adequately protect the interests of the proposed class. Plaintiff's counsel have diligently investigated, informally and through formal discovery, the facts relevant to the claims of Plaintiff and other class members, as well as the defenses that have been asserted. Plaintiff's counsel have obtained and reviewed thousands of pages of discovery relating to the alleged subject lease payments, and a review of data was conducted to verify the parties' contentions. Ellis Aff., ¶ 3. The Settlement Agreement is the product of extensive arms' length negotiations conducted over a period of months. *Id.*, ¶ 4. Finally, Plaintiff's counsel have extensive experience in prosecuting consumer class actions. *Id.* ¶ 6.

### 5.   **Ascertainable Class**

In order that class-wide adjudication be possible, the plaintiff class "must be sufficiently definite so that it is administratively feasible to determine whether a particular individual is a member." *Crosby v. Soc. Sec. Admin.*, 796 F.2d 576, 580 (1st Cir. 1986), citing 7 C. Wright & A. Miller, *Federal Practice and Procedure,* § 1760, at 581 (2nd ed. 1972). Members of the proposed class must be capable of definition by "stable and objective factors." *Kent*, 190 F.R.D. at 278.

Pursuant to the Settlement Agreement, the Settlement Class is defined as follows:

    (a)    "Settlement Class I," consisting of all persons whose motor vehicle lease was transferred or assigned to Defendants and:

        (i)    who have a credit entry – equal to either the base monthly payment, the monthly rent payment, or the total monthly

          payment set forth in the lease agreement – appearing in the general ledger account on Chase's financial records named "Charge Off Income" as of October 31, 2004; and

    (ii)    for whom no record has been located indicating that such credit entries in the Charge Off Income account were previously paid to any such lessee; and

(b)    "Settlement Class II," consisting of all persons whose motor vehicle lease was transferred or assigned to Defendants, which lease terminated during the period from March 27, 2000, through July 31, 2004, and who:

    (i)    made a monthly lease payment to Defendants equal to the total monthly lease payment due under their lease within fifteen (15) days before or thirty (30) days after the Lease Maturity Date; and

    (ii)    did not retain possession of the vehicle that was the subject of the lease for more than thirty (30) days past the Lease Maturity Date; and

    (iii)    did not owe any portion of any past due monthly rent payment at the time the Settlement Bill was generated.

Settlement Agreement ¶ B.1. The members of the Settlement Class are identifiable, according to "stable and objective factors," from Defendants' business records. Ellis Aff. ¶ 5. In fact, Defendants have already specifically identified each Settlement Class member and has provided the class lists to Class Counsel. *Id.* Accordingly, there is no issue as to the ascertainability of the Settlement Class. *See Pettway v. Harmon Law Offices, P.C.*, 2005 WL 2365331 at *12 (D. Mass. Sept. 27, 2005)(no issue of class ascertainability "as each prospective class member can be identified from [defendant's] records").

    **B.**    **Rule 23(b) Requirements.**

Certification of a plaintiff class pursuant to Fed. R. Civ. P. 23(b) requires a finding that "common questions of law and fact predominate over individualized

questions, and that the class action is superior to other available methods for fair and efficient adjudication of the controversy." *Id.*

### 1. **Predominance**

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. For purposes of Rule 23(b)(3) certification, "the 'predominance' and 'superiority' labels turn largely on the particular facts and issues presented." *Tardiff v. Knox County,* 365 F.3d 1, 4 (1st Cir. 2004). *See also Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000)(predominance inquiry "cannot be reduced to a mechanical, single-issue test"; court looks for "a sufficient constellation of common issues [that] binds class members together"); *George Lussier Enterprises, Inc. v. Subaru of New England, Inc.*, Civil No. 99-109-B, 2001 U.S. Dist. LEXIS 12054, at *21 (D.N.H. Aug. 3, 2001)("The predominance requirement is satisfied when "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof."), quoting *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1233 (11th Cir. 2000).

Drafters of Rule 23(b)(3) "had dominantly in mind vindication of 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.'" *Amchem*, 521 U.S. at 617, quoting Kaplan, *A Prefatory Note*, 10 B.C. Ind. & Com. L. Rev. 497, 497 (1969). *See also Smilow*, 323 F.3d at 41 ("The core purpose of Rule 23(b)(3) is to vindicate the claims of consumers and other groups of people whose individual claims would be too small to warrant litigation.") Not

surprising, then, "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem*, 521 U.S. at 625.

Here, the central factual questions focus on Defendants' alleged conduct in invoicing and collecting lease payments, while the predominant legal issue is whether such alleged conduct amounted to a pattern of racketeering activity under RICO. Any differences in the potential recovery available to class members do not create predominating individual issues. *See Smilow*, 323 F.3d at 40 ("Where ... common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied even if individual damages issues remain," for "[t]he individuation of damages in consumer class actions is rarely determinative under Rule 23(b)(3)."); *In re Lupron® Marketing and Sales Practices Litigation*, 228 F.R.D. at 92 (predominance requirement met where "core factual issues" involved defendant's marketing practices, "need to establish the elements of a civil RICO claim – the conduct of an enterprise through a pattern of racketeering activity – poses mixed issues of fact and law common to the class", and individual issues "primarily involve the amount of damages to be awarded to individual class members[.]")

### 2. **Superiority**

As to the superiority requirement, Fed. R. Civ. P. 23(b)(3) enumerates the following considerations:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

11

*Id.* Consideration of these factors favors certification of the Settlement Class, especially since any manageability issues are not a concern in the context of the certification of a class action settlement class.[1]

Here, because the 1,037 members of Settlement Class I incurred damages, if any, amounting at most to only several hundred dollars, and because the 48,169 members of Settlement Class II sustained only nominal, if any, damages, the superiority of a class action is evident:

> The superiority analysis dovetails with the predominance analysis. The issue here is one that lies at the very heart of the invention of the class action as a litigation vehicle: few, if any, members of the settlement class have incurred damages in an amount sufficient to justify the costs of pursuing an individual action. That fact alone makes a class action the only means by which most class members can obtain redress. Even if the claims could be prosecuted individually, their sheer number would make it unlikely that any significant number would be resolved during the lifetimes of the consumer class members.

*In re Lupron® Marketing and Sales Practices Litigation*, 228 F.R.D. at 92.

## II. THE NOTICE PROCEDURE PROVIDES FAIR NOTICE OF THE SETTLEMENT.

The identities of all individual members of the Settlement Class are available in the business records maintained by Defendants. Ellis Aff., ¶ 5. The Settlement Agreement provides that individual notice will be sent to the last known address of each of the Settlement Class members, as updated through the National Change of Address ("NCOA") database maintained by the United States Postal Service. *See* Settlement Agreement ¶ C.2.a. *See Perry v. FleetBoston Financial Corp.*, 2005 WL 1527694, at *6

---

[1] A class action settlement moots any manageability concerns. *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997)("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial.")

(E.D. Pa. June 28, 2005)(court approves process of updating last known addresses by checking against NCOA database).

If any Notices are returned with a new forwarding address provided by the Post Office, the Notice will be re-sent to the new address. *Id*. If a notice is returned and no forwarding address is provided, Defendants will attempt to obtain a current address and then resend the notice. *Id*. at ¶ C.2.b. The individual notice plan contemplated by the Settlement Agreement more than satisfies Rule 23(c) and principles of due process. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974)("the express language and intent of Rule 23(c)(2) leave no doubt that individual notice must be provided to those class members whose names are identifiable through reasonable effort."); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.")

The Notice contemplated by the Settlement Agreement also fulfills the requirement of neutrality in class notices and summarizes the terms of the Settlement Agreement in an informative and coherent manner. For example, the Notice includes: (a) the case caption; (b) descriptions of the lawsuit and the Settlement Class; (c) the identity of the Settling Defendants; (d) a description of the potential benefits of the Settlement Agreement; (e) identification of Class Counsel for the Settlement Class; (f) the date, time and location of the Final Hearing; (g) information about and the deadline for filing of comments on and/or objections to the Settlement Agreement; (h) the fact that final approval of the proposed Settlement will result in a release and dismissal of the claims

against Defendants of individual class members; (i) the procedure for excluding oneself from the Settlement Class and the consequences thereof; and (j) disclosure of the fees and expenses Class Counsel will seek approval for from this Court.  This information and more is provided in the form of answers to simple, direct questions, such as "Why did you get this Notice?" "What are your options?" and "Who can help with additional information?"  The Notice likewise details the settlement approval process, and notifies Settlement Class members of their opportunity to be heard at the Final Hearing and the procedure for taking advantage of such opportunity.

### III. THE SETTLEMENT AGREEMENT IS FAIR, ADEQUATE AND REASONABLE.

At this stage of the proceedings, where the parties seek only conditional certification of a settlement class and an order commencing the notice procedure, full judicial review of the Settlement Agreement is premature.  Conditional certification should be granted and notice should issue if a preliminary evaluation of the Settlement Agreement does not "disclose grounds to doubt its fairness or other obvious deficiencies…" *Tenuto v. Transworld Systems, Inc.*, 2001 WL 1347235, at *1 (E.D. Pa. 2001); *In re Prudential Securities Inc. Limited Partnerships Litigation*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995).  *See also In re Lupron® Marketing and Sales Practices Litigation*, 345 F. Supp. 2d at 137 (preliminary approval of class action settlement appropriate where "the negotiations in this case have been conducted at arm's length and … the proposed settlement is free of any hint of collusion.")

Here, the Settlement Agreement is the product of principled, arm's length bargaining among experienced counsel preceded by discovery concerning the allegations at issue.  *See* Ellis Aff., ¶¶ 3, 4.  Only after conducting discovery and a review of data to

verify the parties' contentions did counsel for the parties undertake meaningful settlement negotiations. *Id*. The negotiations occurred over the course of several months and were hard-fought. *Id*. at ¶ 4.

"An initial presumption of fairness is usually involved if the settlement is recommended by Class Counsel after arm's-length bargaining." Newberg & Conti, *Newberg on Class Actions,* § 11:42 at 118 (4th ed. 2002). Plaintiff's counsel believes that the case on the merits is strong. Defendants have contested any liability to the Settlement Class and believe that Defendants' defenses to Plaintiff's claims are strong. Plaintiff's counsel believes that the proposed settlement is reasonable because it not only achieves a recovery for those 1,037 lessees for whom no record has been located indicating that their credit entries in the Charge Off Income account were previously paid to such lessees, but also achieves a recovery of more than the alleged actual damages for class members in Settlement Class II. Ellis Aff., ¶ 7. The total settlement fund is in the amount of $2.5 million. **No class member needs to submit any claim form or other documentation in order to receive compensation from the Settlement Fund.** Checks will be sent to all class members after Final Approval. In addition, since the initiation of Plaintiff's lawsuit, without admitting any wrongdoing or liability on Defendants' part and denying the same, Chase has changed the form and manner of invoicing which is the subject of the Complaint.

In light of the discovery obtained by Plaintiff's counsel, the arm's length negotiations leading to the Settlement Agreement, the nature of the proposed settlement compensation, and the fact that no claim forms are required, the proposed Settlement Agreement lacks any "hint of collusion" and warrants this Court's preliminary approval.

## CONCLUSION

Because the terms of the proposed Settlement Agreement are fair, adequate and reasonable, Plaintiff respectfully requests that this Court issue the Proposed Order Preliminarily Approving Settlement, which is attached as Exhibit B to the Joint Motion for Preliminary Approval of Class Action Settlement, Conditional Certification of Settlement Class and Commencement of Settlement Approval Process.

        Respectfully submitted
        For the Plaintiff,

        s/Fredric L. Ellis
        Fredric L. Ellis, BBO # 542075
        Joseph M. Makalusky, BBO # 631240
        ELLIS & RAPACKI LLP
        85 Merrimac Street, Suite 500
        Boston, MA 02114
        (617) 523-4800

Dated: March 10, 2006

## CERTIFICATE OF SERVICE

I hereby certify that on March 10, 2006, I electronically filed the foregoing document with the Clerk of the Court using the ECF System which will send notification of such filing to the following:

R. Bruce Allensworth, Esq.
Andrew C. Glass, Esq.
Kirkpatrick & Lockhart LLP
75 State Street
Boston, MA  02109

        /s/ Fredric L. Ellis
        Fredric L. Ellis

Date:  March 10, 2006