# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **LORI B. GANS, individually and on behalf of a class of others similarly situated,**<br><br>**Plaintiff,**<br><br><br><br>**v.**<br><br>**CHASE MANHATTAN AUTOMOTIVE FINANCE CORP. and MANUFACTURERS HANOVER LEASING INTERNATIONAL CORPORATION, as successor by merger to CHASE MANHATTAN SERVICE CORPORATION,**<br><br>**Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**C.A. No.:  04-10595-RGS**

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR <u>APPROVAL OF AWARD OF ATTORNEYS' FEES</u>

Fredric L. Ellis, BBO # 542075
Joseph M. Makalusky, BBO # 631240
ELLIS & RAPACKI LLP
85 Merrimac Street, Suite 500
Boston, MA  02114
(617) 523-4800

Attorneys for Plaintiff

Dated:  August 11, 2006

## INTRODUCTION

Plaintiff and Class Representative Lori B. Gans ("Plaintiff"), individually and on behalf of a class of persons similarly situated, submits this memorandum of law in support of the Joint Motion for Final Approval of Class Action Settlement ("Joint Final Approval Motion") filed herewith by Plaintiff and the defendants, Chase Manhattan Automotive Finance Corp., n/k/a Chase Auto Finance Corp. ("Chase") and Manufacturers Hanover Leasing International Corporation, as successor by merger to Chase Manhattan Service Corporation (together, "Defendants").

On March 21, 2006, this Court entered its Order Preliminarily Approving the Class Action Settlement ("Prelim. App. Order"), conditionally certifying a settlement class and directing Defendants to issue notice as prescribed under the terms of the parties' settlement agreement dated February 28, 2006 ("Settlement Agreement").[1]  That notice having been issued, and with only eleven (11) of the almost 50,000 class members having requested exclusion from the settlement, the parties' Joint Final Approval Motion is ripe for decision.

As discussed more fully herein, the proposed settlement warrants final approval pursuant to Fed. R. Civ. P. 23(e).  The requirements for certification of the class of leaseholders ("Settlement Class") are met, and individual notice of the terms of the settlement has been directed to the members of the Settlement Class.  Substantively, the proposed settlement achieves complete refunds for the approximately 1,000 lessees for whom Defendants could produce no record of pre-suit payment or credit, as well as a recovery in excess of the alleged actual damages for another 48,000 class members.  The parties have been served with only one objection (which, as explained below, is based on a misunderstanding of the terms of the

---

[1]   A copy of the Settlement Agreement is attached as Exhibit A to the parties' Joint Motion for Preliminary Approval of Settlement, which was filed on March 10, 2006.

proposed settlement), and only a miniscule number of class members elected to exclude themselves from the settlement. These facts warrant a finding that the proposed settlement is fair, reasonable, adequate and in the best interest of all class members.

Finally, Class Counsel's requested award of attorneys' fees and expenses is reasonable and fair. Accordingly, Plaintiff respectfully requests the entry of the [Proposed] Final Order Approving The Class Action Settlement And Final Judgment, which is attached as Exhibit A to the Joint Final Approval Motion.

## BACKGROUND

### I.    THE LITIGATION

This action was commenced on March 26, 2004, alleging that Defendants violated the RICO Act (18 U.S.C. § 1961, *et seq.*) and the common law by purportedly unlawfully billing, collecting and retaining an additional monthly lease payment in excess of the number of such payments required under the applicable motor vehicle leases. Subsequent discovery and a review conducted in 2004 and 2005 of available lease account data revealed that Defendants had credited payments to lessees' accounts with respect to approximately 98% of all lessees who made such lease payments. Defendants were unable to locate records of credit entries for the remaining lessees.

### II.    THE SETTLEMENT NEGOTIATIONS

The parties' settlement discussions commenced in the spring of 2005. Affidavit of Fredric L. Ellis ("Ellis Aff.") ¶ 2. Arm's length negotiations - conducted over the course of several months - included extensive discussions concerning the merits of the class claims, the defenses asserted, the actual damages sustained, the identification of class members and the compensation to be given to class members. Following concessions made by each side, the negotiations produced the Settlement Agreement dated February 28, 2006. *Id.* ¶ 2, 3.

## III.   THE SETTLEMENT TERMS

### A.   <u>Definition of the Settlement Class.</u>

The Settlement Agreement defines the Settlement Class as follows:

(a)    "Settlement Class I," consisting of all persons whose motor vehicle lease was transferred or assigned to Defendants and:

    (i)    who have a credit entry – equal to either the base monthly payment, the monthly rent payment, or the total monthly payment set forth in the lease agreement – appearing in the general ledger account on Chase's financial records named "Charge Off Income" as of October 31, 2004; and

    (ii)    for whom no record has been located indicating that such credit entries in the Charge Off Income account were previously paid to any such lessee; and

(b)    "Settlement Class II," consisting of all persons whose motor vehicle lease was transferred or assigned to Defendants, which lease terminated during the period from March 27, 2000, through July 31, 2004, and who:

    (i)    made a monthly lease payment to Defendants equal to the total monthly lease payment due under their lease within fifteen (15) days before or thirty (30) days after the Lease Maturity Date; and

    (ii)    did not retain possession of the vehicle that was the subject of the lease for more than thirty (30) days past the Lease Maturity Date; and

    (iii)    did not owe any portion of any past due monthly payment at the time the Settlement Bill was generated.

Excluded from the Settlement Class is each person who submits a timely and valid Request for Exclusion…and any person who was a lessee or co-lessee on the same lease with a person submitting a timely and valid Request for Exclusion.

Settlement Agreement, ¶ B.1.

### B.   <u>The Settlement Benefits.</u>

Chase has represented that, without admitting any wrongdoing or liability on Defendants' part and denying the same, it no longer sends out invoices in the form and manner which gave rise to this lawsuit.  Settlement Agreement ¶ B.3.

There are more than 1,000 class members in Settlement Class I, which consists of those class members for whom no record has been located indicating that the applicable credit entries

in the Charge Off Income account were previously paid to any such lessee. Each member of Settlement Class I will receive payment in an amount equaling their credit entry minus each such class member's pro rata share of the Class Counsel's attorneys' fees and expenses and class representative fee as approved by the Court. *Id.* ¶ B.2(b)(i).

There are more than 48,000 class members in Settlement Class II, which consists of class members for whom the applicable payment was previously credited. Each member of Settlement Class II will receive payment of approximately $44.00, minus each such class members' pro rata share of Class Counsel's attorneys' fees and expenses and class representative fee as approved by the Court. *Id.* ¶ B.2(b)(ii).

If an individual class member meets the defined requirements for both groups, he or she will receive the amount equaling their credit entry, plus approximately $44.00, minus each such class member's pro rata share of Class Counsel's attorneys' fees and expenses and class representative fee as approved by the Court. *Id.* ¶ B.2(b)(iii).

No claim forms will be required to be filed by members of the Settlement Class. Instead, upon final approval of the Settlement, Defendants will send checks to members of the Settlement Class pursuant to the terms of Paragraph B.2 of the Settlement Agreement. *Id.* ¶ B.2.

## IV.    PRELIMINARY APPROVAL

On March 21, 2006, the Court conditionally certified the Settlement Class pursuant to Fed. R. Civ. P. 23(a) and (b)(3). Prelim. App. Order ¶¶ 3-4. The Court appointed Plaintiff as Class Representative, and Plaintiff's counsel, Fredric L. Ellis, Esq. and Joseph M. Makalusky, Esq., as Class Counsel *Id.* ¶ 5. The Court found that for purposes of preliminary approval, the Notice of the Settlement proposed by the parties satisfied the requirements of Fed. R. Civ. P. 23 and due process, and directed Chase to mail a copy of such Notice to each member of the

Settlement Class.  *Id.* at ¶¶ 7-8.  A hearing on final approval of the Settlement is scheduled for August 29, 2006.

## V.    THE NOTICE, OPT-OUTS AND LACK OF SIGNIFICANT OBJECTORS

On or about May 3, 2006, Chase mailed a copy of the Notice to the almost fifty thousand (50,000) members of the Settlement Class.  Affidavit of William Murphy ("Murphy Aff."), ¶ 3, 4.  The court-approved Notice informed these class members of, *inter alia*, (i) the nature of the action, (ii) the definition of the Settlement Class, (iii) the class claims and defenses, (iv) that a class member may enter an appearance through counsel if the member so desires, (v) that the court will exclude from the Settlement Class any member who requests exclusion, stating when and how members may elect to be excluded, (vi) the binding effect of a class settlement on Settlement Class members, (vii) the amount of attorneys' fees Class Counsel will seek approval for, and (viii) the procedure for commenting on or objecting to the Settlement.  *See* Notice (Exhibit 1 to Settlement Agreement.)

Requests for exclusion from the Settlement Class, which were to be post-marked no later than July 31, 2006, were received from only 11 of the almost 50,000 class members.  Ellis Aff. ¶ 6.  Only 1 class member served counsel with an objection, no Settlement Class member has filed a separate notice of appearance.  *Id.* at ¶ 7.

## **ARGUMENT**

## I.    THE INDIVIDUAL NOTICE DIRECTED TO CLASS MEMBERS HERE<br>SATISFIES RULE 23 AND DUE PROCESS.

As a result of the discovery and investigation conducted by the parties before and during settlement negotiations, Chase was able to compile lists of the names and last known addresses for all members of the Settlement Class.  Murphy Aff., ¶ 3.  These lists were then updated with information in the United States Postal Service's National Change of Address database.  *Id.*, ¶ 4.  On or about May 3, 2006, Chase mailed a copy of the Notice to all 48,717 class members.  *Id.* at

¶ 3, 4.  Of these, 4,677 were returned undelivered.  Affidavit of Rebecca Bruce at ¶ 5.  Pursuant

to paragraph C.2(b) of the Settlement Agreement, forwarding addresses were obtained for 4,012

of these class members, and another copy of the Notice was then mailed to each forwarding

address.  *Id.* at ¶ 6, 7.   In the end, just 533 of the approximately 50,000 Notices (or

approximately 1 %) were undeliverable.  *Id.*  Hence, this Court should conclude that the notice

requirements of Fed. R. Civ. P. 23(c)(2)(B) and due process have been satisfied for purposes of

granting final approval to the Settlement.

## II.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED, AS THE REQUIREMENTS OF FED. R. CIV. P. 23(a) AND (b)(3) ARE SATISFIED.

 "Before addressing whether the settlement is fair, adequate and reasonable, this Court

must certify the class."  *Bussie v. Allmerica Fin. Corp.*, 50 F. Supp.2d 59, 69 (D. Mass. 1999).

The class certification inquiry does not determine the merits of litigation, "but rather serves the

limited purpose of determining whether a class action is the most appropriate mode of

adjudicating plaintiff's claims."  *Mack v. Suffolk County*, 191 F.R.D. 16, 22 (D. Mass. 2000),

citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974).  In the end, "'when a court is in

doubt as to whether to certify a class action, it should err in favor of allowing a class.'"

*McAdams v. Mass. Mut. Life Ins. Co*., 2002 WL 1067449, at *2 (D. Mass. May 15, 2002),

quoting *In re Cardizem CD Antitrust Litig*., 200 F.R.D. 297, 303 (E.D. Mich. 2001).  This is

particularly true when a court is asked to certify a class for settlement purposes only, as opposed

to a litigation class, since there are no issues of manageability for trial and there is a healthy

preference for settlement.[2]

### A.    The Requirements Of Rule 23(a) Have Been Met.

For any class to be certified, it must first be shown that "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

### 1.    Numerosity.

The Settlement Class consists of almost fifty thousand (50,000) identified members from many different states. *See* Ellis Aff., ¶ 4. Given that Rule 23(a)'s numerosity requirement implicates the practicality of joinder, *see* Herbert Newberg & Alba Conte, <u>Newberg on Class Actions</u> § 3.4 (4th ed. 2002), the Settlement Class here passes this test. If not entirely impossible, it certainly is impracticable to join all members of the geographically diverse Settlement Class in this lawsuit. *See Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986); *Holton v. L.F. Rothschild*, 118 F.R.D. 280, 282 (D. Mass. 1987).

### 2.    Commonality.

The commonality requirement of Rule 23(a)(2) "does not require that class members' claims is identical." *Boulet v. Cellucci*, 107 F. Supp.2d 61, 81 (D. Mass. 2000). Instead, there simply must exist some questions, which, when answered as to one class member, is answered as to all. "This commonality requirement is a 'low hurdle' easily surmounted… Indeed it requires

---

[2]    In order that class-wide adjudication be possible, the plaintiff class "must be sufficiently definite so that it is administratively feasible to determine whether a particular individual is a member." *Crosby v. Soc. Sec. Admin.*, 796 F. 2d 576, 580 (1st Cir. 1986), citing 7 C. Wright & A. Miller, *Federal Practice and Procedure*, § 1760, at 581 (2nd ed. 1972.) Here, the Defendants have specifically identified each Settlement Class member from their business records and have provided the class lists to Class Counsel. Accordingly, there is no issue as to the ascertainability of the Settlement Class. *See Pettway v. Harmon Law Offices, P.C.*, 2005 WL 2365331 at *12 (D. Mass. Sept. 27, 2005)(no issue of class ascertainability "as each prospective class member can be identified from [Defendant's] own records.")

only that 'resolution of the common questions affect all or a substantial number of the class members." *Duhaime v. John Hancock Mut. Life Ins. Co.,* 177 F.R.D. 54, 63 (D. Mass. 1997), quoting *Jenkins v. Raymark Ind. Inc.,* 782 F. 2d 468, 472 (5th Cir. 1986).  Accordingly, the commonality requirement is satisfied when the class members' claims arise out of a "common nucleus of operative fact."  *McAdams v. Mass Mutual Life Ins. Co.*, 2002 WL 1067449, at *3, quoting *Rosario v. Livaditis*, 963 F. 2d 1013, 1018 (7th Cir. 1992), *cert denied*, 506 U.S. 1051 (1993), or are subject to the same common defenses, see *Smilow v. Southwestern Bell Mobile Sys., Inc.*, 323 F. 3d 32, 39 (1st Cir. 2003).

Here, the commonality requirement is easily met.  The Complaint alleges that Defendants, pursuant to a regular business practice, issued to all class members an invoice for a purportedly additional monthly lease payment.  Whether recovery of damages for this alleged practice is available under the federal RICO law is but one example of the common issues affecting all class members.  *See In re Lupron® Marketing & Sales Practices Litig.*, 228 F.R.D. 75, 88-89 (D. Mass. 2005)(commonality requirement "easily satisfied" in civil RICO case arising out of retail pricing of prescription medication); *Kennedy v. Tallant*, 710 F. 2d 711, 718 (11th Cir. 1983)("a single conspiracy and fraudulent scheme against a large number of individuals is particularly appropriate for class action.")

### 3.    Typicality.

"'Typicality refers to the nature of the claim of the class representatives, and not to the specific facts from which the claim arose or relief is sought.'"  *M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*, 100 F.R.D. 468, 470 (D. Mass. 1984), quoting *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 99 (S.D.N.Y. 1981).  Put differently, in order to establish the requisite nexus between Plaintiff and the other members of the Settlement Class, the collective claims must focus on Chase's common course of conduct and must share a common legal theory.

*See Mack v. Suffolk County*, 191 F. R. D. at 23; *Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 325 (D. Mass. 1997). "Because the claims need only share the same essential characteristics and need not be identical, courts have concluded that the typicality requirement is not highly demanding." 5 Moore's Federal Practice, § 23.24[3], at 23-93 – 23-94 (3rd ed.).

Here, the shared claims of Plaintiff and the other members of the Settlement Class arise out of Chase's alleged practice of sending invoices and collecting payment for an additional month in excess of the lease term. Plaintiff alleged that at the expiration of the 39-month least term of her 1998 lease, she was invoiced, and did pay, a 40th monthly lease payment that allegedly was represented by Chase as being the final lease payment. Plaintiff's claims are typical of the claims of the other class members as the "named plaintiffs claims arise from the same [alleged] course of conduct that gave rise to the claims of the absent [class] members." *Duhaime*, 177 F.RD. at 63, quoting *Burstein v. Applied Extrusion Tech. Inc.*, 153 F.R.D. 488, 491 (D. Mass. 1994).

Any differences in the amount of damages allegedly suffered by individual class members do not render "atypical" the claims of one group in comparison with the other. In order to satisfy the typicality requirement of Rule 23(a)(3), a plaintiff "need not show substantial identity between [her] claims and those of absent class members, but need only show that [her] claims arise from the same course of conduct that gave rise to the claims of absent members." *Priest v. Zayre Corp.*, 118 F.R.D. 552, 555 (D. Mass. 1988.)

### 4.    Adequacy.

There are two basic guidelines for meeting the adequacy of representation standard of Rule 23(a)(4): (1) the absence of potential conflict between the named plaintiff and the class members and (2) that counsel chosen by the representative parties is qualified, experienced and

able to vigorously conduct the proposed litigation. *Andrews v. Bechtel Power Corp.*, 780 F. 2d

124, 130 (1st Cir. 1985), *cert. denied*, 476 U.S. 1172 (1986).

Here, Plaintiff has the same interest as the other members of the Settlement Class in a

financial recovery for Defendants' alleged invoicing practices, and Plaintiff and her counsel have

demonstrated that they will fairly and adequately protect the interests of the proposed class.

Through formal discovery and informal review of account information, Class Counsel have

diligently and extensively investigated the facts pertinent to the available claims, as well as the

defenses that have been asserted. Class Counsel have obtained and reviewed thousand of pages

of discovery relating to the alleged subject lease payments, and a rigorous review of account data

was conducted to verify the parties' contentions as to the identification of class members. Ellis

Aff. ¶ 5. The Settlement Agreement is the product of extensive arm's-length negotiations

conducted over a period of several months. *Id.* at ¶ 2, 3. Finally, Class Counsel are experienced

in prosecuting consumer class actions. *Id.* at ¶ 8.

**B.      The Requirements Of Rule 23(b)(3) Have Been Met.**

In addition to meeting the prerequisites of Rule 23(a), the proposed Settlement Class also

meets the "predominance" and "superiority" requirements of Rule 23(b)(3). The predominance

inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by

representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). *See also Waste*

*Mgmt. Holdings, Inc. v. Mowbray*, 208 F. 3d 288, 296 (1st Cir. 2000)(court looks for "a sufficient

constellation of common issues [that] binds class members together"); *George Lussier*

*Enterprises, Inc. v. Subaru of New England, Inc.*, 2001 WL 920060, at *7 (D.N.H. Aug. 3,

2001)("the predominance requirement is satisfied when 'the issues in the class action that are

subject to generalized proof, and thus applicable to the class as a whole, predominate over those

issues that are subject only to individual proof'"), quoting *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F. 3d 1228, 1233 (11th Cir. 2000).

Here, the common issues focus on Defendants' alleged conduct in the invoicing and collection of lease payments. Differences in the amount of damages suffered by individual class members do not create predominating individual issues in this case. *See Smilow*, 323 F. 3d at 40 ("Where…common questions predominate regarding liability, then courts generally find the predominance requirement to be satisfied even if individual damages issues remain," for "[t]he individuation of damages in consumer class actions is rarely determinative under Rule 23(b)(3).") *See also In re Lupron® Marketing and Sales Practices Litigation*, 228 F.R.D. at 91.[3]

It is also true that certification of a settlement class would be the superior means to bring this litigation to an end.[4] To begin, the interest of absent class members in prosecuting their own action against Chase is virtually nonexistent, as evidenced by the fact that only 11 lessees elected to opt-out of the Settlement Class. *See Bussie*, 50 F. Supp.2d at 72 (given low opt-out numbers, the court concluded that there was "relatively little interest in conducting separate lawsuits" for Rule 23(b)(3) purposes). The amount at stake for any individual class member would not warrant individual prosecution, as the average monthly lease payment for the members of Settlement Class I is approximately $350.00, while the members of Settlement Class II sustained only nominal, if any, actual damages. In addition, there is no indication of any pending action similar to the instant one. It is also desirable to consolidate this action in this particular forum given the attendant savings of judicial resources, prevention of duplication of effort and the

---

[3] As the United States Superior Court has recognized, "[p]redominance is a test readily met in certain cases alleging consumer…fraud…" *Amchem*, 521 U.S. at 625.

[4] The factors to consider under the "superiority" prong of Rule 23(b) are: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3).

avoidance of inconsistent verdicts.  Finally, "[w]ith respect to the fourth factor, this Court,

deciding whether to certify a settlement-only class, 'need not inquire whether the case, if tried,

would present intractable management problems[.]'"  *Bussie*, 50 F. Supp.2d at 72, quoting

*Amchem Products, Inc.*, 521 U.S. at 620, for the proposal is that there be no trial.

Hence, this Court should certify the proposed Settlement Class under Fed. R. Civ. P.

23(b)(3).

## III.    THE SETTLEMENT PROPOSED BY THE PARTIES IS FAIR, REASONABLE AND ADEQUATE.

As Fed. R. Civ. P. 23(e)(1)(C) directs, before approving a settlement of a class action, the

court must determine whether that settlement is fair, reasonable, and adequate.  "This fairness

determination is not based on a single inflexible litmus test but, instead, reflects its studied

review of a wide variety of factors bearing on the central question of whether the settlement is

reasonable in light of the uncertainty of litigation."  *Bussie*, 50 F. Supp.2d at 72.  *Accord Rolland

v. Cellucci*, 191 F.R.D. 3, 8 (D. Mass. 2000).  Nevertheless, the policy favoring settlement,

which is particularly strong in the context of a class action, has a significant bearing on a court's

exercise of discretion.  *Durrett v. Housing Auth'y of the City of Providence*, 896 F.2d 600, 604

(1st Cir. 1990).  *See also Lazar v. Pierce*, 757 F.2d 435, 440 (1st Cir. 1985)(Torruella, J.,

concurring)(pointing out "the overriding public interest in favor of the voluntary settlement of

disputes, particularly where class actions are involved").

"[F]ederal courts have generally considered a variety of factors that may be divided into

two categories:  (1) those considerations addressing the fairness of the process by which the

settlement was negotiated; and (2) those considerations bearing on the substantive fairness of the

settlement."  *Duhaime*, 177 F.R.D. at 67.  Here, both the process that resulted in the proposed

settlement, and its substantive terms, merits this Court's approval.

### A.    The Arm's Length Negotiation Process Was Fair.

Where, as here, "sufficient discovery has been provided and the parties have bargained at arm's length, there is a presumption in favor of the settlement." *City Partnership Co. v. Atlantic Acquisition Ltd. Partnership*, 100 F.3d 1041, 1043 (1st Cir. 1996). *See also* Newberg & Conti, *Newberg on Class Actions* at § 11:42 ("[a]n initial presumption of fairness is usually involved if the settlement is recommended by Class Counsel after arm's-length bargaining.")

Prior to entering settlement negotiations, Class Counsel undertook a thorough investigation of the facts giving rise to the stated claims, the potential theories of recovery, and the asserted defenses. Through formal discovery, informal investigation and a review of lease account data supplied by Defendants – a process that included hundreds of hours devoted to a review and analysis of account information to ensure that all Settlement Class members would be properly compensated – Class Counsel thoroughly prepared their case on behalf of the proposed class. *See* Ellis Aff. ¶¶ 5, 9. These considerations weigh in favor of granting final approval to the Settlement. *See Bussie*, 50 F. Supp.2d at 77 ("The parties' enormous discovery effort . . . enabled Lead Counsel to assess the merits of the Class's litigation position and, in turn, to negotiate a principled compromise."); *Giusti-Bravo v. United States Verterans Admin.*, 853 F. Supp. 34, 38 (D.P.R. 1993)(approving class action settlement, where, *inter alia*, "plaintiffs' attorneys were extremely diligent in conducting discovery, and that at the time the settlement agreement was reached an extensive amount of discovery had already been completed.")

Moreover, while settlement discussions began in the spring of 2005, the Settlement Agreement was not completed and executed until February 28, 2006. That there was no rush to settlement underscores the fact that the Settlement was scrupulously negotiated. *See Duhaime*, 177 F.R.D. at 68 (nine months negotiation period recognized as evidence of arm's-length bargaining). The negotiations here were hard fought, included frequent input from the

principals, and involved both sides making concessions.  *See* Ellis Aff. ¶ 3.  To quote a judicial

finding equally applicable to this case, "[t]here is no evidence that this settlement was collusive

in any way."  *Duhaime*, 177 F.R.D. at 68.

      **B.**      **The Substantive Terms Of The Proposed Settlement Are Fair.**

A variety of factors may be considered to determine if a proposed class action settlement

is substantively fair, including (i) how the relief offered by the Settlement compares to the

potential relief available after trial, (ii) the reaction of the Settlement Class to the proposed

settlement, and (iii) whether experienced counsel involved in the case believe that the Settlement

is more than fair, reasonable and adequate.  *See generally Bussie*, 50 F. Supp.2d at 72-78;

*Duhaime*, 177 F.R.D. at 68-71.

      **1.**      **The certainty of compensation offered by the Settlement Agreement compares well with the possible relief available after trial.**

"One factor to consider in weighing the fairness of the settlement is whether the

plaintiffs' 'likelihood of success on the merits' balances appropriately against 'the amount and

form of the relief offered in settlement.'"  *Duhaime*, 177 F.R.D. at 68, citing *Santana v. Collazo*,

714 F.2d 1172, 1175 (1st Cir. 1983).  Here, it is evident that an appropriate balance has been

struck, as the proposed settlement offers compensation to all class members in amounts

essentially equal to, or in excess of, each member's actual damages.  While the Settlement

Agreement, by definition, short circuits the significant expense, delay and uncertainty attendant

to litigation, it is significant that the settlement payments will be made to class members within

ninety (90) days of final approval.  **The proposed settlement does not require class members**

**to submit a claim form in order to receive their compensation.**  *See* Settlement Agreement ¶

B.2.  This is a direct result of the significant amount of work done by Chase and Class Counsel

in identifying the Settlement Class members and calculating the settlement amounts.

Beyond that, Chase has represented that it has made changes to its computer billing system such that it no longer issues invoices in the form and manner which gave rise to this lawsuit. *See* Settlement Agreement ¶ B.3.

Compared with the uncertain prospects involved in litigating this putative class action to completion, it is clear that the Settlement Agreement offers fair, reasonable and adequate relief to the members of the Settlement Class.

>    **2.    The paucity of opt-outs and the single objection reflect broad support for the proposed settlement among the members of the Settlement Class.**

While it is well established that a settlement may be deemed fair notwithstanding a large number of objectors, the proposed settlement here is notable for the absence of any meaningful objection to its approval and the statistically insignificant number of opt-outs. *See Bussie*, 50 F. Supp.2d at 77 ("The number of requests for exclusion from the settlement, as well as the number and substance of objections filed, is relevant to this Court's analysis of the settlement."); *Rolland*, 191 F.R.D. at 11 (same).

The single objection to the Settlement was filed by G. Byron Qualls, of Branchburg, New Jersey. In May 2006, after receiving individual notice as directed by the Court, Mr. Qualls wrote to the Court and counsel expressing his concern that Chase had "kept money that was not owed to them" and that he would only receive "1 tenth of the damages that [he was] owed." *See* Ellis Aff. at Ex. 1. In a response to Mr. Qualls dated May 31, 2006, one of Class Counsel explained that the objection was founded on a misunderstanding:

> The lawsuit arose out of a challenge to certain business practices of Chase Auto Finance – essentially, the issuance of an invoice for a monthly lease payment in excess of the term of the applicable lease. For most customers, that extra lease payment later was either refunded or credited against other amounts owed by the lessee. For some customers, Chase has been unable to document a refund or credit made by Chase to the lessee. The proposed settlement compensates the latter group in full for the extra payment. The other class members (those who already were compensated by either refund or credit) will receive a smaller

amount (the $44.00 figure minus a share of attorneys' fees and class representative fee) because, as the lawsuit alleges, we believe it was unlawful for Chase to have billed and collected the extra payment in the first place, notwithstanding the fact that reimbursement was made later.

Chase's records demonstrate that you were refunded the amount of your extra payment. Thus you will receive a check for $44.00 minus a share of the attorneys' fees and class representative fee if you remain a class member.

Ellis Aff. at Ex. 2. Since sending this response, Class Counsel has not received any further comment or objection from Mr. Qualls.

As noted earlier, the Notice was mailed individually to the almost 50,000 Settlement Class members, and only 11 elected to exclude themselves from the Settlement. *See* Ellis Aff. ¶ 6.[5] Even so, none of these opt-outs expressed any discontent with the Settlement itself. *See Id.* Given the reaction of the Settlement Class, it is evident that the vast majority of class members perceive the proposed settlement to be fair, reasonable and adequate.

### 3.    Class Counsel Believe That The Settlement Is Fair.

Finally, it is persuasive that the Settlement is endorsed by experienced counsel as being fair, reasonable and adequate. *Rolland*, 191 F.R.D. at 10; *Bussie*, 50 F. Supp.2d at 77. Class Counsel are experienced litigators who have substantial class action experience. Ellis Aff., ¶ 9. Not only may this Court consider the representations of counsel that the Settlement is fair, but, as the Fifth Circuit Court of Appeals has written, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977). Indeed, the presumption in favor of approving such settlements reflects an understanding and appreciation that vigorous negotiations between experienced counsel protects against collusion and advance the Rule 23(e) fairness concerns.

---

[5]    Indeed, over nine (9) times that number – a total of 100 class members – contacted Class Counsel to update their address in order to ensure mailing of their settlement compensation to the correct address.

IV.    **THE AMOUNT OF ATTORNEYS' FEES AND EXPENSES SOUGHT BY CLASS COUNSEL IS REASONABLE.**

Class Counsel are seeking Court approval of attorneys' fees and expenses in a total amount of seven hundred and fifty thousand dollars ($750,000.00).  In assessing the reasonableness of the requested attorneys' fees in a common fund case such as this, "the district court, in the exercise of its informed discretion, may calculate counsel fees either on a percentage of the fund basis or by fashioning a lodestar."  *In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995)(adopting percentage of fund method of assessing attorney fee award).  *See also In re Fleet/Norstar Securities Litig.*, 935 F. Supp. 99, 109 (D.R.I. 1996)(using percentage of fund method); *Branch v. FDIC*, 1998 WL 151249, *4 (D. Mass. March 24, 1998)(same).  While the First Circuit and many other courts have noted that the percentage of fund ("POF") approach has distinct advantages, *see, e.g., In re Compact Disc Maximum Advertised Price Antitrust Litig.*, 292 F. Supp. 2d 184, 190 (D. Me. 2003)(describing POF as "preferred" method of assessing fees), it is evident that the award of fees and expenses sought by Class Counsel is reasonable when viewed through either a POF or lodestar prism.

A.    **The Proposed Fee Award Is Reasonable, As It Amounts To Just 30% Of The Actual Dollar Recovery On Behalf Of The Settlement Class.**

Courts in this judicial circuit prefer the POF method for awarding counsel fees because that method is less burdensome to administer than the lodestar method, it encourages efficiency, and, because it is result oriented, it "better approximates the working of the marketplace."  *In re Thirteen Appeals*, 56 F. 3d at 307.  *See also In re Fleet/Norstar Securities Litig.*, 935 F. Supp. at 108 (same); *Duhaime v. John Hancock Mut. Life Ins. Co.*, 989 F. Supp. 375, 377 (D. Mass. 1997)(POF analysis "appropriately aligns the interests of the class with the interests of the class counsel – the larger the value of the settlement, the larger the value of the fee award").  "At least

nine other Circuits - - the Second, Third, Sixth, Seventh, Eight, Ninth, Tenth, Eleventh, and the
District of Columbia - - have approved the use of the percentage of fund method in common
fund cases." *In re Lupron Marketing and Sales Practices Litigation*, 2005 WL 2006833, at *3
(D. Mass, August 17, 2005), citing *Manual for Complex Litigation*, § 14.121 (Fed. Jud. Ctr. 4th
ed. 2004)("[t]he vast majority of courts of appeals now permit or direct district courts to use the
percentage-fee method in common fund cases").

Here, the dollar value of the actual recovery secured by Class Counsel amounts to $2.5
million.  Class Counsel's fee request ($750,000) represents just 30% of the monies to be paid to
the members of the Settlement Class.  "The majority of common fund fee awards fall between
20% to 30% of the fund." *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th
Cir. 1991), citing H. Newberg, Attorney Fee Awards § 2.08, at 51 (1986).  *See also Shaw v.
Toshiba Am. Info. Sys., Inc.*, 91 F.Supp.2d 942, 972 (E.D. Tex. 2000)(noting studies that show
that "regardless whether the percentage method or the lodestar method is used, fee awards in
class actions average around one-third of the recovery"); *In re Centennial Techs. Litig.*, C.A. No.
1:97-10304-REK (D. Mass. 1998)(awarding as fee 30% of stock and cash refunded); *In re
Copley Pharmaceutical, Inc. Sec. Litig.*, C.A. No. 94-11897-WGY (D. Mass. 1996)(awarding fee
equal to 1/3 of fund); *Pavlidis v. New England Patriots Football Club, Inc.,* 675 F. Supp. 707,
709-712 (D. Mass. 1987)(approving 26% fee, observing that "[f]ees in the 20% - 50% range in
common fund class actions are not uncommon and have been held to be reasonable"); *Manual
for Complex Litigation*, § 14.121 (fees awarded under POF method are often between 25 and
30%).  Given that Class Counsel have achieved essentially full recovery, if not more, on behalf

of the Settlement Class, an award of attorneys' fees and expenses amounting to 30% of the actual dollars paid to class members would be reasonable.[6]

### B.    A Lodestar Analysis Also Supports Class Counsel's Fee Request.

A lodestar analysis may be employed in a common fund case as a "cross-check" on the fee award suggested by the POF approach, but a lodestar check is not required.  *See Thirteen Appeals*, 56 F. 3d at 307-308 (declining to employ lodestar cross-check in percentage of fund case).  In conducting a lodestar analysis, a court begins by "multiplying the number of hours productively expended by counsel times a reasonable hourly rate."  *Lipsett v. Blanco*, 975 F.2d 934, 937 (1st Cir. 1992).  *Accord Adams v. Bowater Inc.*, 2004 WL 1572697, at *3 (D. Me. May 19, 2004).

Here, Class Counsel's affidavit documents the investment of more than 1,100 hours by attorneys, and more than one hundred and fifty hours by paralegals.  Ellis Aff. ¶ 9.  Such hours were spent in an extensive legal and factual investigation of Chase's billing practices, the identification of members of the Settlement Class, settlement negotiations over the course of several months, and assisting class members who called or wrote in response to the class notice.  All of these documented hours were reasonably spent in pursuit of the interests of the Settlement Class.

Class Counsel's documented legal services have an aggregate value of more than $490,000.00, based on the current, customary rates for work performed by Class Counsel's firm.  *Id*.  Class Counsel's hourly rates are reasonable for experienced class action litigation counsel practicing in Boston.  *See* Affidavit of Elizabeth Ryan, ¶ 8.

---

[6] The $750,000.00 sought by Class Counsel includes several thousands of dollars of expenses. Ellis Aff., ¶ 9.  "[I]n percentage-of-the-fund cases, district courts may, if they so elect, set the percentage at a level which not only accounts for fees, but also suffices to cover reimbursable expenses in whole or in part."  *In re Fidelity/Micron Sec. Litig.*, 167 F. 3d 735, 737 (1st Cir. 1999).

Moreover, Class Counsel's requested award in the amount of $750,000 represents a contingency fee multiplier of approximately 1.53 – well within the range of multipliers approved by other courts. *See, e.g., In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 82 (D.Mass. 2005)(finding 2.02 multiplier to be appropriate; citing other cases).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court to enter an Order in the form attached as Exhibit A to the Joint Final Approval Motion, granting final approval of the class action settlement and approving an award of attorneys' fees and expenses.

Respectfully submitted
For the Plaintiff,

s/Fredric L. Ellis
Fredric L. Ellis, BBO # 542075
Joseph M. Makalusky, BBO # 631240
ELLIS & RAPACKI LLP
85 Merrimac Street, Suite 500
Boston, MA 02114
(617) 523-4800

## CERTIFICATE OF SERVICE

I hereby certify that on August 11, 2006, I electronically filed the foregoing document with the Clerk of the Court using the ECF System which will send notification of such filing to the registered participants identified on the Notice of Electronic Filing.

/s/ Fredric L. Ellis
Fredric L. Ellis